IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HUBERT DUWAYNE HILL, | |
| Plaintiff, | |
| v. | Case No. 25-cv-333-NJR |
| CLEVELAND RAYFORD, DR. AMPADU, JODY COLLMAN, TOM SCHMIDT, MATT SCHWENDEMAN, JACOB CARLISLE, JOHN DOE DEPUTY, and SHERIFF JEFF CONNOR, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Hubert Duwayne Hill, a pretrial detainee at the Madison County Jail, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is currently before the Court on Hill's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 3). Hill seeks pain medication for his cirrhosis of the liver and right shoulder injury. Hill also seeks care for his mental health needs. Defendant Sheriff Jeff Connor filed a response in opposition to the motion (Doc. 24) and later supplemented his response with Hill's medical records (Doc. 26).

## BACKGROUND

On March 10, 2025, Hill filed a Complaint alleging claims related to his medical care at the Madison County Jail (Docs. 1, 6). Hill alleged that he suffered from stage IV cirrhosis of the liver and a right shoulder injury but had not received care since being

1

booked into the Madison County Jail (Doc. 6, p. 2). He alleged that Dr. Cleveland Rayford refused to see him for his conditions and only prescribed Tylenol and Ibuprofen (*Id.*). Although Hill filed grievances about his medical care, Dr. Rayford still refused to see him (*Id.*). On January 30, 2025, Hill sought care from Dr. Ampadu who refused to prescribe pain medications for his condition. Although Dr. Ampadu did order an MRI and an orthopedic referral, those orders were later denied by the insurance company (*Id.* at p. 3). Instead, Hill was prescribed physical therapy. Hill requested a specific pain medication that Dr. Ampadu initially denied (*Id.*). Dr. Ampadu later approved the medication but refused to increase the dosage (*Id.*). Hill later complained about the dosage, and Dr. Ampadu discontinued the medication altogether (*Id.*).

Hill also alleged that in response to his grievances, he started receiving threats from officers at the jail, including Matt Schwendeman, Jacob Carlisle, and Tom Schmidt (Doc. 6, p. 2). Hill made threats to the officers and, in return, officers Schwendeman, Carlisle, Schmidt, and John Doe Deputy physically assaulted him on January 16, 2025 (*Id.* at pp. 2-3).

After a review of Hill's Complaint pursuant to 28 U.S.C. § 1915A, he was allowed to proceed on the following counts:

> Count 1: Fourteenth Amendment claim against Dr. Cleveland Rayford and Dr. Ampadu for refusing to provide Hill with adequate treatment for his medical conditions.
>
> Count 2: Fourteenth Amendment excessive force claim against Schmidt, Schwendeman, Carlisle, and John Doe Deputy for their use of force against Hill on January 16, 2025.

       Count 3:      First Amendment retaliation claim against Schmidt, Schwendeman, Carlisle, and John Doe Deputy for threatening Hill and using excessive force in response to Hill's grievances regarding his medical care.

(Doc. 6, p. 5).

In addition to his Complaint, Hill filed a motion for preliminary injunction and/or temporary restraining order (Doc. 3). Hill alleged that despite having stage IV cirrhosis and a severe right shoulder injury, he failed to receive any treatment or pain medication from medical staff at the Madison County Jail (*Id*. at p. 1). He also claimed that he failed to receive any mental health care at the jail (*Id*.). Hill requested a court order for pain medication (*Id*. at p. 2).

In response to Hill's motion, Sheriff Jeff Connor argued that Hill failed to meet the requirements for a temporary restraining order. Specifically, Connor argued that Hill failed to show a likelihood of success on the merits because he was receiving medical treatment for his pain. In support of his argument, Connor offered the affidavit of Rob Kelly, a charge nurse at the Madison County Jail (Doc. 24-1). Kelly documented the care that Hill had received for both his pain and mental health needs while at the Madison County Jail. Connor later submitted several exhibits, including medical records, to support Kelly's affidavit (Doc. 26).[1]

---

[1] Connor initially submitted Kelly's affidavit with no medical records. Although Kelly's affidavit mentioned specific medical appointments with Hill, as well as grievances he filed, none of those records were attached to the affidavit to support the statements he made. The Court subsequently ordered Connor to submit the documents used to support Kelly's statements. Connor then submitted 144 pages of medical records (Doc. 26). The documents are divided into 12 separate attachments but do not line up to Kelly's affidavit. There are also numerous duplicate records. Moreover, Kelly failed to amend his affidavit to reference a specific attachment or page number

### A. Pain Management

In his affidavit, Kelly stated that Hill was booked into the Madison County Jail on January 3, 2025 (Doc. 24-1, p. 1; Doc. 26-4, p. 1). At that time, Hill noted that he had high blood pressure, cirrhosis, and psychiatric issues (Doc. 26-4, p. 2). He also filled out a questionnaire on his medical conditions and mental health (*Id*. at pp. 3-4). He noted that he had stage IV cirrhosis of the liver, as well as rotator cuff and hip issues (*Id*. at p. 3). On January 4, 2025, he was evaluated by medical staff (Doc. 24-1, p. 1).

On January 9, 2025, Hill submitted a grievance requesting pain medication for his stage IV cirrhosis (Doc. 26-9, pp. 1-2; Doc. 24-1, p. 1). He noted that due to his condition, he could not take Tylenol or Ibuprofen, and he needed a better pain medication (Doc. 26-9, p. 1). In response, jail staff noted that the doctor had ordered lab work and wanted to wait for the results before prescribing any medication (*Id*. at p. 2; Doc. 24-1, p. 1). On January 18, 2025, Hill received an x-ray of his right shoulder (Doc. 26-2, p. 12).

On January 30, 2025, Dr. Charles Ampadu saw Hill for complaints of pain (Doc. 26-3, p. 18; Doc. 26-2, p. 4; Doc. 24-1, p. 2). Hill informed Dr. Ampadu that he had chronic lower back pain and abdominal pain from liver cancer. Hill noted that he received the diagnosis in November 2024 but had not received treatment (Doc. 26-3, p. 18; Doc. 26-2, p. 4). Dr. Ampadu noted that a CT scan completed on January 7 showed no signs of liver cancer or cirrhosis; instead, the CT showed signs of esophagitis and gastritis (*Id*.).

---

to the records, making it extremely difficult to locate the documents that support Kelly's statements.

Dr. Ampadu requested an ultrasound of the abdomen as well as a referral to a pain clinic (*Id.*).

On January 28, 2025, Hill submitted a sick call request, requesting to see the doctor about pain medication (Doc. 26-10, pp. 1-2; Doc. 26-12, pp. 1-2). He again noted that he suffered from stage IV cirrhosis and liver cancer. As a result, he was unable to take Tylenol or Ibuprofen for his pain (*Id.*). Staff responded that Hill would see the doctor the next time that the doctor was at the jail (*Id.* at p. 2).

On February 11, 2025, staff at the jail called two different pain management clinics, trying to obtain an appointment for Hill (Doc. 26-4, p. 16). Both clinics were already booking into June (*Id.*). Hill saw Dr. Ampadu the next day for pain in his shoulder and back (Doc. 26-2, p. 24). Hill also reported that he was diagnosed with stage IV liver disease with cirrhosis (*Id.*). Hill noted that previously prescribed Tramadol, Meloxicam, Gabapentin, and lidocaine patches failed to provide him with any relief (*Id.*). Hill specifically requested opioids to manage his pain; Dr. Ampadu noted that Hill refused to take any other medications (*Id.*). Hill informed Dr. Ampadu that he self-medicated with opioids before being booked into the jail (*Id.*). Dr. Ampadu noted that Hill was angry when Dr. Ampadu made his recommendations and was insistent that he be prescribed opioids (*Id.*). Dr. Ampadu noted that Hill was currently on Suboxone, but he would be referred to an orthopedic surgeon. Dr. Ampadu also ordered an MRI of Hill's right shoulder (*Id.*).

On February 26, 2025, Hill submitted a grievance indicating that he no longer wanted to take Suboxone (Doc. 26-4, p. 12). At an appointment the next day, Hill

5

reiterated that he wanted to stop taking Suboxone because he felt that it was ineffective in managing his pain (Doc. 26-2, p. 1; Doc. 26-4, p. 12).

On March 5, 2025, Hill saw Dr. Ampadu for shoulder pain (Doc. 24-1, p. 3). Hill requested Oxycodone, believing it to be the only medication that would help his shoulder pain (Doc. 26-3, p. 10; Doc. 26-1, p. 30). He refused the Tramadol offered by Dr. Ampadu (*Id.*). Dr. Ampadu noted that Hill was scheduled for an MRI of the right shoulder later that day, and he directed Hill to wait for the results for further evaluation and recommended treatment (*Id.*). Hill did not agree with the recommendation (*Id.*). Dr. Ampadu's notes indicate that Hill was angry and left the room in the middle of their meeting, threatening to talk to his lawyer about his care (*Id.*).

The records indicate that Hill received an MRI of his right shoulder as scheduled on March 5 (Doc. 26-3, p. 8). Hill attended a follow-up with Dr. Ampadu a week later (*Id.* at p. 9; Doc. 26-1, p. 25). Hill again requested Oxycodone and refused any other pain medication (*Id.*). Based on the MRI, Dr. Ampadu assessed Hill with right rotator cuff tendinosis with no evidence of a tear (*Id.*). He recommended Pregabalin to treat the pain and noted that Hill was scheduled for a pain management referral and an orthopedic referral (*Id.*). Hill again expressed his disagreement with the course of treatment. On March 17, 2025, Hill was scheduled with a pain management clinic, with his new patient appointment set for June 23, 2025 (Doc. 26-3, p. 1).

On March 16, 2025, Hill submitted a sick call request for his pain management (Doc. 26-3, p. 13). He noted that he was still in a lot of pain, both in his shoulder and in his abdomen from his cirrhosis (*Id.*). Two days later, a provider noted in a progress note

6

that Hill continued to complain of pain and felt that his pain was not being addressed (*Id.* at p. 7). The progress note indicates that Hill had been prescribed a variety of pain medications, including Tramadol, Suboxone, and Pregabalin, but Hill reported that each provided no relief (*Id.*). Due to Hill's cirrhosis, he was unable to take large amounts of Tylenol, Vicodin, or Ibuprofen (*Id.*). On April 12, 2025, Hill submitted another request to see a provider (Doc. 24-1, p. 4). He saw the provider three days later. The progress note from that appointment again noted Hill's belief that he was not receiving care for his pain (Doc. 26-1, p. 1). The note indicated that the provider would attempt to obtain earlier appointments with both the pain management clinic and an orthopedic specialist but the provider informed Hill that specialty appointments usually have longer wait times (*Id.*). The provider recommended trying Tramadol for Hill's pain and noted that Hill had not taken the medication for very long and refused to give it a chance to work (*Id.*). Hill then agreed to try to the Tramadol (*Id.*). After the appointment, staff contacted the pain management clinic but the clinic was booked, and there were no earlier appointments (Doc. 26-4, p. 6).

    **B. Mental Health**

As to Hill's mental health, upon entering the Madison County Jail he noted in his questionnaire that he suffered from psychiatric issues (Doc. 26-4, p. 2). He specifically noted that he suffered from both schizophrenia and bi-polar disorder and was on medication for the conditions (*Id.* at pp. 4-5). On February 23, 2025, Hill was evaluated for his mental health (Doc. 26-1, p. 28). He noted that he was schizoaffective and heard

7

voices depending on his level of stress (*Id.*). He was referred to a mental health provider (*Id.* at p. 29).

On March 20, 2025, Hill saw Dr. Brian A. Falls for a mental health assessment (Doc. 26-1, pp. 13-16). Hill informed Dr. Falls that he was previously diagnosed as schizoaffective but currently unmedicated (*Id.* at p. 13). He noted that when he is angry or aggravated, the voices in his head tell him what to do (*Id.*). He informed Dr. Falls that he was currently taking Lamotrigine but felt that Olanzapine worked the best for his mental health (*Id.*). Dr. Falls recommended trying Lurasidone, Hydroxyzine, and Omega-3 fatty acids, all at low doses due to his cirrhosis diagnosis (*Id.* at p. 16). Hill agreed to the prescriptions.

On March 24, 2025, Hill again saw Dr. Falls for a mental health examination (Doc. 24-1, p. 3; Doc. 26-1, p. 9-10). Hill requested an antipsychotic that he was previously prescribed due to continued hallucinations and delusions (Doc. 26-1, p. 9). He also reported feeling anxious (*Id.* at p. 10). Dr. Falls recommended restarting Olanzapine, the drug Hill indicated he had been previously prescribed, as well as Hydroxyzine (*Id.* at p. 11). Hill acknowledged the risks, given his medical conditions, but was adamant that he start the medication because he feared outbursts of aggression due to his mental conditions (*Id.* at pp. 9, 11).

## LEGAL STANDARDS

A temporary restraining order may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in

opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). The same legal analysis is used to determine whether a temporary restraining order or a preliminary injunction is warranted.

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary

9

injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## ANALYSIS

Hill contends that he is not receiving medical care for his medical conditions. He argues that he has not received pain medication or treatment for pain associated with his right shoulder injury and cirrhosis. He also argues that he has not received any care for his mental health needs.

Hill fails to demonstrate, however, that he has a likelihood of success on the merits of his claims. *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (explaining that movant's "showing of likelihood of success on the merits must be strong"). Although he maintains that he has not received any mental health care or medical care for his pain, the medical records clearly demonstrate that Hill has in fact received care for his conditions. Throughout the course of his detention at the Madison County Jail, Hill has submitted numerous sick call requests. Each one was responded to, and Hill has normally been seen within a few days of his request (Doc. 26-1, pp. 2-4, 7-8, 17-24; 26-3, pp. 11-16; Doc. 26-2, pp. 16-21; Doc. 26-6, pp. 1-2).

The medical records further indicate that Hill has been given various medications to combat his pain. When Hill reported that a certain medication was not working or caused a bad reaction, the providers prescribed other medications (Doc. 26-4, pp. 10, 12).

Although Hill contends that he did not receive pain medication, the medical records make clear that this is not an accurate recitation of the facts. Instead, it appears from the medical records that Hill merely did not receive the pain mediation he *wanted*. Hill asked for Oxycodone, noting that he self-medicated with the drug before his arrest. Dr. Ampadu tried various different pain medications to treat Hill's pain, including Tramadol, Suboxone, and Pregabalin. On numerous occasions, however, Hill either refused the medications prescribed or indicated his displeasure at not receiving Oxycodone (Doc. 26-1, pp. 25, 30; Doc. 26-3, pp. 9-10). Often times he only took the medications for a short amount of time, not giving them enough time to be effective (Doc. 26-1, p. 1; Doc. 26-3, p. 7; Doc. 26-4, p. 10-11). Although Hill may not be happy with Dr. Ampadu's course of treatment, his simple dissatisfaction "does not give rise to a constitutional violation unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (internal quotations omitted). As a pretrial detainee, Hill must demonstrate that defendants acted "purposefully, knowingly, or…even recklessly." *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018). Hill has offered only his dissatisfaction with his treatment.

There is simply no evidence to suggest that the treatment provided to Hill has been inappropriate. Providers have been quick to schedule referrals and testing. Dr. Ampadu requested a referral to the pain management clinic and an MRI. The referral request for the MRI noted that the request was urgent (Doc. 26-2, pp. 10-11). Staff at the jail even tried to obtain an earlier appointment for the pain clinic when Hill continued to complain of

pain (Doc. 26-1, p. 1; Doc. 26-4, p. 16). He was scheduled for an appointment at a pain clinic at the earliest appointment, on June 23, 2025 (Doc. 26-3, p. 1). Officials at the jail have acted reasonably in treating Hill's conditions; there is no evidence to suggest that they have disregarded his need for medical care. *Miranda*, 900 F.3d at 353. Similarly, Hill has received mental health treatment, seeing a mental health care provider on numerous occasions, and he was prescribed his requested medication for his schizoaffective disorder. There is simply no evidence in the record to suggest that Hill is likely to succeed on his claim that Defendants failed to provide him with pain medication, medical care, and/or mental health care. Thus, Hill fails to demonstrate that he is entitled to injunctive relief at this time.

## CONCLUSION

For the reasons stated above, Hill's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 3) is **DENIED**.

**IT IS SO ORDERED.**

DATED:  August 27, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**